JACK LEA v. THE STATE.

TAXING DISTRICT. *Incorporated towns. Sale of whisky.* A taxing district of the second class, organized under the act of 1881, ch. 127, is an incorporated town within the meaning of the act of 1877, ch. 23, and a sale of an intoxicating beverage in the district within four miles of an incorporated institution of learning, falls within the exception of the second section of that act.

FROM WILSON.

Appeal in error from the Circuit Court of Wilson county. ROBT. CANTRELL, J.

SAMUEL GOLLADAY, ED. I. GOLLADAY and W. H. WILLIAMSON for Lea.

JORDAN STOKES and ATTORNEY-GENERAL LEA for The State.

COOPER, J., delivered the opinion of the court.

Lea was convicted of tippling liquor within four miles of an incorporated institution of learning, and appeals in error.

The conviction was had under the act of 1877, ch. 23, by the first section of which it is made a misdemeanor to tipple any intoxicating beverage within four miles of an incorporated institution of learning. The second section of the act is: "That this act shall not apply to the sale of such liquors within the limits

of any incorporated town." The defense at the trial was that the defendant sold the liquor within the limits of an incorporated town, and the sale was therefore within the . saving of the second section of the act. The sale was made in the boundaries of the town of Lebanon. By the act of 1881, ch. 8, all acts incorporating the town of Lebanon were repealed, except so much of the last act of incorporation as prescribed the boundaries of the town. At the same session of the Legislature, the act of 1881, ch. 127, was passed, entitled an act to establish Taxing Districts of the second class, and to provide the means of local government therefor. The act grants municipal franchises to the communities within the territorial limits of certain districts, including towns not exceeding thirty thousand inhabitants whose charters have been repealed, in order to provide the means of local government, with the usual legislative, executive and judicial powers. The community within the boundaries of the town of Lebanon were re-incorporated under the Taxing District act, and the sale of liquors for which the defendant Lea stands convicted was made within the limits of the town after the incorporation. The trial judge in his charge to the jury said: "I am asked to charge you, that if the sale was within an organized Taxing District of the second class, your verdict should be for the defendant. I charge you that a man has no right to sell intoxicating beverages within four miles of an incorporated institution of learning within a Taxing District of the second class. This right is . expressly prohibited by the act that creates the Taxing

Districts." The sixteenth section of the act does pro-
vide: "That nothing in this act shall be construed as
permitting the retailing of intoxicating liquors in such
Taxing Districts within four miles of a chartered in-
stitution of learning." And the charge does squarely
raise the question whether this section can have any
and what effect on the second section of the act of
1877?

By the act of 1881, ch., 149, sec. 4, the dealing
in liquor by retail, or tippling, is made a privilege,
as it had been by the pre-existing revenue laws, the
dealers being taxed as other merchants, and also made
liable to an additional tax, graduated in a specified
mode. Taking this act in connection with the act of
1877, the license of the dealer is subject to the pro-
vision of the penal statute that the business shall not
be carried on within four miles of an incorporated
institution of learning, except within the limits of an
incorporated town. Whether the license law ante dated
or followed the penal statute, the latter being in *pari
materia* and constituting a part of a general system,
would equally apply to regulate the business under the
license. So, whether a town was incorporated before
or after the passage of the act of 1877, the limitation
of the second section of that act would equally apply
to it. If, therefore, the Taxing Districts of the second
class organized under the act of 1881, ch. 127, are
municipal corporations, the sale of liquor within their
limits would be within the saving of the second sec-
tion of the act of 1877, and the dealer not subject to
the penalties of the first section. For the words "in-

Lea *v.* The State.

corporated town" in the last act manifestly mean any municipal corporation without reference to its population or the special provisions of its charter.

At the session of the Legislature of 1879, the char·ter of the city of Memphis and of a number of towns were repealed, and an act was passed entitled an act to establish Taxing Districts in this State, and to provide the means of local government for the same. Under this act, and acts amendatory thereof, the territory and people of the city of Memphis were incorporated into a Taxing District, and the legality and effect of the legislation came before this court for consideration. We held that these acts were grants of municipal franchises to the communities within the territorial limits of the Taxing Districts, in order to provide the means of local government; that they created the "agencies and governing instrumentalities" of a municipal corporation, with the usual legislative, executive and judicial powers; that the local government thus organized was clothed with the authority, and intended to answer the purposes of a municipal body; in fine, that the Taxing Districts were municipal corporations: *Luehrman* v. *Taxing District*, 2 Lea, 425. A change of name could not alter the nature of the legislation. A charter for municipal purposes is an investing of the people of a place with the local government thereof, constituting an *imperium in imperio*, the corporators and the territory being the essential elements, and all else being mere incidents or forms: *O'Connor* v. *City of Memphis*, 6 Lea, 730, 736. It has not been doubted that the municipalities organized under these acts were

31—VOL. 10.

Lea *v*. The State.

incorporated towns within the meaning of the act of 1877.

The act establishing Taxing Districts of the second ·class equally grants municipal franchises to the communities within the territorial limits of the districts, and creates the "agencies and governing instrumentalities" of a municipal corporation, with the usual legistive, executive and judicial powers. There is no difference in principle in the character of the respective acts, and the corporations organized under them. They ·differ merely in the machinery of corporate government in precisely the same way that the charter of a city might be expected to differ from the charter of a village. The Taxing Districts of the second class are as ·clearly municipal corporations as the Taxing Districts of the first class. The sale of liquor within the limits of a Taxing District of the second class would, therefore, be as much within the saving of the second section of the act of 1877 as the sale within the limits of any other incorporated town.

His Honor, the trial judge, was of opinion that the right to sell liquor by retail within four miles of a chartered institution of learning in a Taxing District of the second class was prohibited by the act ·creating these districts. And it may be conceded that such was the intention of the Legislature by the language used in the sixteenth section: "That nothing in this act shall be construed as permitting the retailing of intoxicating liquors in such Taxing District within four miles of a chartered institution of learning." But the intention cannot be effectuated except by treat-

ing this section as repealing the general statute of 1877, or exempting the incorporated communities within those districts from its provisions. And the difficulty is in seeing how this can be done consistently with the provisions of the constitution, and the usual rules of statutory construction. Our duty is to carry into effect the intention of the Legislature if possible.

The act creating Taxing Districts of the second class does not give to the corporation organized under it, or to the officers of such a corporation any authority in relation to the privileges created by the general laws of the State. The corporation can pass no ordinance inconsistent with those laws. It cannot even levy a tax on either property or privileges. This is expressly forbidden by section 9, and by section 11, the State levies a tax of one dollar on every one hundred dollars of taxable property, and on all merchants and privileges a tax equal to the general State tax, for the purpose of supporting the corporate government. The municipal authorities are not vested, by the act, with power to permit or forbid the exercise of any business licensed by the State as a privilege. Nor has the Legislature undertaken in the act, by positive language, to forbid such exercise. The language of section sixteen is merely negative, "that nothing in the act shall be construed as permitting," etc. And there is nothing in the act which either permits or forbids in so many words.

The constitution of the State, art., 2, sec. 17, says: "All acts which repeal, revive or amend former laws, shall recite in their caption or otherwise the title or

substance of the laws repealed, revived or amended."
The act creating Taxing Districts of the second class
cannot be considered as an act to repeal or to amend
the act of 1877, for neither in its "caption or other-
wise" does it recite the "title or substance" of the
penal statute.. Nor does it contain any such positive
provisions upon the subject-matter of the statute as
would operate a repeal by implication. The sixteenth
section, as we have seen, is merely negative in its lan-
guage. The truth is, the Legislature had a general
intent to create a new class of municipal corporations,
and a particular intent that this class of corporations
should not be within the saving of the penal statute.
The general intent is fully carried out in every re-
spect, while the particular intent fails for want of the
constitutional recitals or the positive language necessary
for the purpose. And if there had been the proper
recitals or language, the whole act would, perhaps,
have been obnoxious to another provision of the sec-
tion of the constitution above cited, that: "No bill
shall become a law which embraces more than one sub-
ject, that subject to be expressed in the title." For
the creation of a class of municipal corporations, and
the alteration of a general penal law can scarcely be
considered as one subject, even if the general law bear
upon all municipal corporations. And the result would
be the same if the sixteenth section be treated as an
attempt to exempt one class of corporations from the
operation of a provision of a general law. And it is
at least doubtful whether a separate act which under-
took to exempt one class of municipal corporations

Lea *v.* The State.

from the provisions of a penal law applicable to all such corporations, would be constitutional.

If it was the intention of the Legislature to exclude a construction of the act as permitting the sale of liquors under the impression that such sale was already prohibited by the existing law, the result would be the same. The language is not sufficient to create a declaratory act upon which the courts can base a new construction. The old law remains in force precisely as if the language had never been used.

The judgment of the circuit court must be reversed, and the cause remanded for a new trial.

This decision disposes of several other cases depending upon the same question, the records of which are handed in with this case. The judgments will be reversed, and the causes remanded.